**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **HEATHER HERCULES,** | |
| Plaintiff, | **Case No. 2:20-cv-3924** |
| **v.** | **Judge James L. Graham** |
| **JOSH KELLY,** *et al.,* | **Magistrate Judge Kimberly A. Jolson** |
| Defendants. | |

<u>**OPINION AND ORDER**</u>

This diversity action is before the Court on Defendant Jeffrey Benton's Motion for Summary Judgment (ECF No. 38) and Defendant Josh Kelly's Civil Rule 56(c) Motion for Summary Judgment (ECF No. 41). For the reasons that follow, Defendants' motions (ECF Nos. 38 and 41) are **DENIED**.

I.    **BACKGROUND**

This case arises from a June 21, 2017, motor vehicle accident at the intersection of State Route 7 ("SR 7") and County Road 54 ("CR 54") in Belmont County, Ohio. (Compl. ¶ 4, ECF No. 2 at 21.) State Route 7 is a north and southbound two-lane roadway with a speed limit of fifty-five miles per hour. (Ex. A, Dunn Report 9, ECF No. 41 at 743.) The intersection of SR 7 and CR 54 is a T-intersection. (Ex. E, Gaskill Dep. 20, ECF No. 38-5 at 662.) The only traffic control device for the intersection is a stop sign for CR 54. (*Id.* at 663.) While on her way to work that morning, Plaintiff Heather Hercules traveled eastbound on CR 54 and stopped at the stop sign at the intersection of SR 7 and CR 54. (Ex. A, Hercules Dep. 16, ECF No. 38-1 at 619.)

While stopped at the stop sign, Plaintiff observed oncoming southbound traffic, including the car driven by Defendant Jeffrey Benton. (*Id.* at 620.) Plaintiff also saw the truck driving directly behind Benton, which was operated by Defendant Josh Kelly. (*Id.* at 623–24.) As Benton

1

approached the intersection, Plaintiff observed his right turn signal, indicating that Benton intended to turn right onto CR 54. (*Id.* at 622.)   As Benton prepared to make his right-hand turn, he slowed down and moved toward the shoulder. (Ex. B, Benton Dep. 9, ECF No. 38-2 at 635.) Benton and Kelly disagree as to how far over Benton's vehicle was when he began making his turn.  Benton observed Plaintiff's car and thought she might pull out, so he sounded his horn to prevent her from doing so. (*Id.* at 637.)  Plaintiff did not heed his warning.

As Benton made his right-hand turn onto CR 54, Plaintiff entered the intersection to turn left onto northbound SR 7. (ECF No. 38-1 at 622.)  But as Benton was turning right, Kelly continued traveling southbound on SR 7 between forty and forty-five miles an hour. (Kelly Dep. 13–14, ECF No. 37 at 539–40.)  Benton claims that Kelly went across the double yellow line to pass the back end of his car (ECF No. 33 at 162), but Kelly maintains that he did not cross over the double yellow line (ECF No. 37 at 565).

Plaintiff pulled out in front of Kelly. (*Id.* at 585.)  Kelly swerved and attempted to stop his Ford F-350 by slamming on the brakes but was unsuccessful in avoiding Plaintiff. (*Id.* at 587.) The front left of Kelly's vehicle hit Plaintiff's driver's side door.  (*Id.* at 549.)  Post-impact, both vehicles moved together toward the guardrail east of the northbound lane of SR 7, and Plaintiff's car came to rest against the guardrail. (Ex. A, ECF No. 41 at 743.)  Plaintiff sustained injuries from the impact. (Hercules Dep. 42 ECF No. 34 at 253.)

Mandy Mobley was driving behind Plaintiff that morning and followed her until they both stopped at the intersection. (Ex. D, Mobley Dep. 10, ECF No. 38-4 at 651.)  Mobley witnessed both Benton's and Kelly's vehicles traveling southbound on SR 7 and saw Benton making his right-hand turn when Plaintiff pulled out. (*Id.* at 655.)  As Plaintiff's vehicle entered the intersection, Mobley screamed "no," because she thought Kelly's vehicle was too close to the

intersection for Plaintiff to safely make the turn, and that Plaintiff "was going to get hit." (*Id.* at 656–57.)

Ohio Department of Public Safety Officer Ralph Hendershot responded to the accident scene and issued a Traffic Crash Report. (Ex. B, ECF No. 41 at 767.) Hendershot cited Plaintiff for violating Ohio Rev. Code § 4511.43 for her failure to observe the Right-of-way rule at through highways, stop signs and further noted that she would also be cited for not wearing her seatbelt. (Ex. B, ECF No. 41 at 770, 773.) Hendershot's report did not list Benton as a party to the accident. (*Id.* at 771.)

Seven days after the accident, Trooper Larry Gaskill, from the Ohio State Highway Patrol Reconstruction Unit, reviewed the scene and completed an accident report. Gaskill concluded that nothing obstructed Plaintiff's view, and that Kelly's vehicle was traveling too close for Plaintiff "to safely complete the left turn and clear the southbound lane." (ECF No. 41 at 784.) Gaskill further concluded that "[t]he angle of impact is not consistent with what would be expected if [Kelly] moved left in a manner to pass prior to the intersection." (*Id.*) Gaskill also determined that Benton was not a contributing factor to the car accident, because his vehicle did not have any contact with Plaintiff's, and that Benton did not do anything to cause the crash. (ECF No. 38-5 at 696.)

Kelly's expert, Ashley L. Dunn, Ph.D., P.E., concluded that nothing obstructed Plaintiff's view of the intersection and approaching traffic, that Kelly was traveling 37-40 mph at the time of impact and did not have enough time to react to avoid Plaintiff's vehicle, and that the accident was caused by Plaintiff pulling into the path of Kelly's Ford F-350 without making sure it was clear and safe to do so. (Ex. A, ECF No. 41 at 735–66.)

3

Plaintiff brings negligence claims against both Benton and Kelly. Plaintiff alleges that Benton carelessly and negligently operated his vehicle, and that she relied on Benton to make a legal right turn. (Compl. ¶ 4.) Plaintiff further alleges that by moving onto the right berm of SR 7, Benton allowed Kelly to drive unimpeded at an unsafe speed and strike her vehicle. (*Id.*) Plaintiff also alleges that Kelly drove at an unsafe speed, failed to stay in his lane of traffic, and failed to exercise due care in operating his vehicle.

On August 24, 2021, Benton filed a motion for summary judgment. (ECF No. 38.) It is fully briefed and ripe for adjudication.

On October 8, 2021, Kelly also filed a motion for summary judgment. (ECF No. 41.) It too is fully briefed and ripe for adjudication.

## II.  STANDARD OF REVIEW

Defendants move for summary judgment under Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459, 465 (6th Cir. 2009). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

## III.   DISCUSSION

For Plaintiff to prevail on her negligence claims against Benton and Kelly, she "must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc.*, 157 Ohio St. 3d 512, 516, 138 N.E.3d 1121, 1125 (2019).

### A.  Defendant Benton

Benton moves for summary judgment arguing that Plaintiff cannot establish that he breached any duty of care, or that he proximately caused or contributed to the accident between Plaintiff and Kelly. Plaintiff contends that genuine disputes of material fact exist concerning whether Benton's movement toward the right shoulder as he prepared to make his right-hand turn onto CR 54 caused the accident. Benton responds that even if his movement towards the shoulder allowed Kelly to continue moving forward on SR 7, Plaintiff nonetheless had a duty to yield to Kelly before making her left-hand turn from the stop sign onto SR 7. Benton further avers that his position on the roadway does not make him accountable for Kelly's decision to cross the double yellow line. As discussed below, while there is evidence supporting the assertion that Plaintiff violated a traffic law by not yielding to Kelly, the Court concludes that a jury should decide whether Benton was also negligent, and if so, determine each party's respective shares of fault.

The evidence supports a conclusion that Plaintiff was contributorily negligent. In Ohio, "it is well-established that a vehicle turning left at an intersection has a statutory duty to yield the right

of way to oncoming traffic." *Johnson v. Greater Cleveland Reg'l Transit Auth.*, 2021-Ohio-938, ¶¶ 68-70, 171 N.E.3d 422, 442 (Ct. App.)  Ohio Revised Code § 4511.42(A) "obligates a driver turning left in an intersection to yield the right of way to an approaching vehicle that 'is within the intersection or so close to the intersection * * * as to constitute an immediate hazard.'" *State v. Alford*, 2013-Ohio-5045, ¶ 6 (Ct. App.) (quoting Ohio Rev. Code § 4511.42(A)).  Here, the record evidence shows that: 1) Plaintiff was cited by Ohio Department of Public Safety Officer Hendershot for failing to observe the right-of-way at the intersection; 2) Trooper Gaskill concluded that Kelly's vehicle was traveling too close for Plaintiff to safely complete the left turn onto SR 7 and clear the southbound lane; 3) Kelly's expert, Dr. Dunn, also concluded that the accident was caused by Plaintiff pulling into the path of Kelly's Ford F-350 without making sure it was clear and safe to do so; and 4) non-party witness Mandy Mobley testified under oath that from her vantage point at the stop sign, Kelly's truck was too close to the intersection for Plaintiff to safely make the turn.  Thus, a jury could find that Plaintiff was contributorily negligent.

But under Ohio law, the contributory fault of a plaintiff does not bar recovery of "damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery."  Ohio Rev. Code § 2315.33; *see also* Ohio Rev. Code § 2307.011(B) (defining "contributory fault" as "contributory negligence").

In Ohio, "[i]t is well settled that in order for a person to be entitled to recover in damages for a claimed negligent injury, the act complained of must be the direct and proximate cause of the injury."  *Strother v. Hutchinson*, 67 Ohio St. 2d 282, 286, 423 N.E.2d 467, 470 (1981) (collecting cases).  Ohio courts "rel[y] on the concept of foreseeability in determining whether the negligent act proximately caused the injury."  *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.

3d 257, 271, 29 N.E.3d 921, 935 (2015). "[I]t must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act." *Id.* (cleaned up).

Applying these principles to the instant case and construing the evidence in the light most favorable to Plaintiff, the Court finds that a jury could conclude that it was reasonably foreseeable for Kelly to attempt to pass Benton's car after Benton pulled onto the shoulder. A jury could also conclude that Plaintiff's injury was reasonably anticipated by Benton as evidenced by his honking to warn her not to pull out into the intersection. Because the evidence supports a reasonable inference that Benton was also negligent, a jury should determine whether he was and the parties' respective shares of fault, if any. Benton's motion for summary judgment is therefore denied.

### B. Defendant Kelly

Kelly moves for summary judgment on the grounds that: 1) the undisputed record demonstrates that he did not breach a duty to Plaintiff; 2) that even if he did breach any duty owed to Plaintiff, that Plaintiff's own negligence exceeds any negligence attributable to Defendants; and 3) that Plaintiff's negligence was the sole proximate cause of the accident. In opposing Kelly's motion, Plaintiff acknowledges that a reasonable fact finder could attribute some fault to her, but Plaintiff also argues that genuine disputes of material fact exist concerning what percentage of fault to assign to each party.

Here, the evidence supports a finding that Kelly was also negligent, as a reasonable jury might credit Benton's sworn testimony that Kelly crossed the double yellow line after Benton moved his vehicle towards SR 7's right shoulder in preparation for his turn. Construing the evidence in the light most favorable to Plaintiff, a jury could conclude that as Kelly attempted to pass Benton and crossed the double yellow line, it was reasonably foreseeable that another car might be in Kelly's path and that injury would occur as a result. "Injury is foreseeable if a

defendant knew or should have known that its act was likely to result in harm to someone." *Simmers v. Bentley Constr. Co.,* 64 Ohio St. 3d 642, 645, 597 N.E.2d 504, 507 (1992).

"Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." *Id.* at 508. Here, at summary judgment, reasonable minds can reach different conclusions as to whether Kelly was also negligent and what percentage (if any) of Plaintiff's damages should be attributed to the respective parties. Accordingly, there are factual questions that are not appropriate for resolution at summary judgment, and Kelly's motion for summary judgment is denied.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motions (ECF Nos. 38 and 41) are **DENIED**.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 13, 2022

8